UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| MICHAEL D. MCCAMY, and ) | Chapter 7 |
| PAMELA L. MCCAMY, ) | Case Number 13-60142 |
| ) | |
|     Debtors. ) | |
| ) | |
| JUDY A. ROBBINS, ) | |
| United States Trustee For Region Four, ) | |
| ) | |
|     Movant, ) | |
| ) | |
| *v.* ) | |
| ) | |
| MICHAEL D. MCCAMY, and ) | |
| PAMELA L. MCCAMY, ) | |
| ) | |
|     Respondents. ) | |

**MOTION TO DISMISS CASE FOR ABUSE**

Judy A. Robbins, United States Trustee for Region Four (the "United States Trustee"), by counsel, moves for the entry of an order dismissing the above-referenced Debtors' case pursuant to § 707(b)(1) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). In support of this motion, the United States Trustee respectfully states as follows:

JURISDICTION AND VENUE

1. Jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicates for this motion are §§ 105(a) and 707(b)(1), (b)(3) of the Bankruptcy Code.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

BACKGROUND

1

4. The Debtors are individuals and they filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on January 24, 2013. The petition indicates that the Debtors' debts are primarily consumer debts. The petition, schedules, and statements filed by the Debtors pursuant to § 521 of the Bankruptcy Code are incorporated by reference.

5. The first date set for the meeting of creditors was February 22, 2013.

6. This motion is timely filed.

7. According to Schedule I, the male Debtor has been employed by WETA for 30 years. According to Schedule I, the female Debtor is not employed.

8. According to Schedule I, the Debtors have no dependents. According to Official Form 22A (the "Means Test"), the Debtors have a household size of 2 and the applicable median family income is $64,593.00.

9. According to the Debtors' Means Test, they have a combined current monthly income of $7,974.23, which is 148% of the applicable median income and annualizes to $95,690.76.

10. The male Debtor's payment advices indicate that he earned $91,477.39 from WETA in 2012. The Debtors' federal income tax returns indicate that the male Debtor earned at least $87,705.00 in 2011 and $87,670.00 in 2010.[1]

11. The male Debtor has a stable income.

12. The Debtors overstated certain payroll deductions on Schedule I and understated their combined average monthly income on Schedule I. The Debtors reported a combined average monthly income of $3,545.52 on line 16 of Schedule I.

---

[1] The actual gross earnings in 2011 and 2010 were likely higher than reported on the tax returns because of pre-tax deductions. If the pre-tax deductions for medical and dental insurance were the same in 2011 and 2010 as they were in 2012, then the male Debtor actually earned $93,522.66 in 2011 and $93,487.66 in 2010.

2

13. According to the male Debtor's payment advices, he received net income (gross income less all payroll deductions) of $65,405.59 in 2012, which averages to $5,450.46 per month. Had the male Debtor not been subject to a levy on $150.00 per bi-weekly paycheck starting on September 29, 2013, he would have received net income of $66,455.59, which averages to **$5,537.96** per month.

14. As set forth on line 17 of Schedule I, the Debtors do not expect any change in their income within the year following their petition date.

15. The Debtors listed monthly expenses totaling $4,225.00 on Schedule J.

16. As set forth on line 19 of Schedule J, the Debtors do not expect any change in their expenses within the year following their petition date.

17. The Debtors claimed certain excessive and/or unreasonable expenses on Schedule J including, but not limited to, the expenses listed on lines $1^2$ and 2(c).

18. Upon information and belief, the Debtors acquired their house in 2005 for approximately $386,500.00. They financed the purchase with 2 loans. According to Schedule D, on the petition date, the Debtors owed $304,321.00 to the first lienholder and $100,409.51 to the second lienholder.

19. According to the Debtors, the monthly payment on the first deed of trust is $1,792.00 and the monthly payment on the second deed of trust is $626.00. According to the Debtors, they have not been paying the second lienholder and they received a letter from the second lienholder last year indicating that the lienholder was going to release the obligation.

20. Even if every expense claimed by the Debtors on Schedule J was allowed, the Debtors should have reported monthly net income of **$1,312.96** on line 20(c) of Schedule J.

---

[2] Per line 20B of the Means Test, the Debtors' housing expense is approximately twice the local standard for mortgage/rental expense.

21.     The Debtors scheduled a debt of $41,769.64 owed to Culpepper Regional Hospital.

22.     Upon information and belief, the Debtors' owe Culpepper Regional Hospital because the Debtors' insurance company inadvertently sent payment for a surgery performed at Culpepper Regional Hospital to the Debtors and the Debtors took the money and spent it.

23.     The Debtors scheduled a number of debts owed to the IRS for income taxes for a number of different tax years. According to the Debtors' 2011 federal income tax return, the male Debtor had $73.00 withheld for federal income taxes in 2011. According to the Debtors' 2010 federal income tax return, the male Debtor had $3,521.00.00 withheld for federal income taxes in 2010.

24.     It appears likely that the Debtors incurred the income taxes owed to the IRS because the male Debtor adjusted his allowances on his W-4 so that insufficient taxes were withheld by his employer to satisfy his federal income tax obligations.[3]

25.     The Debtors scheduled general unsecured claims totaling $152,147.12 on Schedule F.

26.     Although the Debtors did not schedule any priority claims on Schedule E, it appears $14,454.00 of the IRS' claims listed on Schedule F relate to income taxes for which the returns were last due within the 3 years before the petition date. Thus, the priority claims may be at least $14,454.00 and the unsecured claims may be $137,693.12.

---

[3] The male Debtor's December 21, 2012, payment advice indicates that he had $7,022.92 in federal income taxes withheld in 2012. The Debtors 2011 and 2010 federal income tax returns indicate that their federal tax liability was $8,439.00 and $8,835.00, respectively, in those years. Thus, it appears likely that the male Debtor adjusted his W-4 allowances in 2012 to have approximately the right amount of federal income taxes withheld in 2012.

27. The Debtors scheduled personal property with a total value of $72,229.00. Excluding the female Debtor's $65,000.00 retirement account, the Debtors scheduled personal property with a total value of just $7,229.00.

28. The Debtors scheduled claims totaling $41,694.13 for consumer debts related to credit cards, personal loans, and "purchases." If this amount is added to the $41,769.64 claim for the insurance payment that the Debtors spent, the Debtors scheduled at least $83,463.77 in claims for amounts incurred living beyond their means.

29. It does not appear that the Debtors filed because of any calamity or sudden loss of income.

## BASIS FOR RELIEF

30. Section 707(b)(3) of the Bankruptcy Code states:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—
>
> (A) whether the debtor filed the petition in bad faith; or
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

31. The totality of the circumstances of the Debtors' financial situation demonstrates that it would be an abuse of the provisions of chapter 7 of the Bankruptcy Code for the Debtors to receive a chapter 7 discharge. By way of example and not limitation, the Debtors: (i) have the ability to fund a substantial distribution to their general unsecured creditors whether inside bankruptcy[4] or outside of bankruptcy; (ii) have understated their income and disguised their true

---

[4] Had the Debtors not understated their monthly net income and even if every expense claimed on Schedule J is allowed, the Debtors should have disclosed monthly net income of $1,312.96 on

5

financial condition in schedules filed with the Court; (iii) have claimed expenses on Schedule J that are unreasonable and/or excessive and/or which they are not paying; (iv) appear to have intentionally incurred debts, including income tax debts, paying for luxuries and living beyond their means; and (v) did not file the case because of any sudden calamity or loss of income. Viewed under the totality of the circumstances of the Debtors' financial situation, the Court should dismiss the Debtors' case unless they voluntarily convert their case to one under either chapter 11 or 13 of the Bankruptcy Code.

32.     In a pre-BAPCPA case, the District Court for the Eastern District of Virginia laid out the following factors to be considered in determining whether a petition was filed in bad faith:

> (1) The debtor's concealment or misrepresentation of assets and/or sources of income, such as the improper or unexplained transfers of assets prior to filing;
>
> (2) The debtor's lack of candor and completeness in his statements and schedules, such as the inflation of his expenses to disguise his financial well-being;
>
> (3) The debtor has sufficient resources to repay his debts, and leads a lavish lifestyle, continuing to have excessive and continued expenditures;
>
> (4) The debtor's motivation in filing is to avoid a large single debt incurred through conduct [*12] akin to fraud, misconduct, or gross negligence, such as a judgment in pending litigation, or a collection action;
>
> (5) The debtor's petition is part of a "deliberate and persistent pattern" of evading a single creditor;
>
> (6) The debtor is "overutilizing the protection of the Code" to the detriment to his creditors;
>
> (7) The debtor reduced his creditors to a single creditor prior to filing the petition;

---

line 20(c) of Schedule J.  Such amount is sufficient to fund a 40.99% distribution to the general unsecured creditors, which is calculated as follows: $1,312.96 x 60 months = $78,777.60 - $7,877.76 (chapter 13 administrative expenses) - $14,454.00 (potential priority debt) = $56,445.84/$137,693.12 (Schedule F debt minus the potential priority debt) = 40.99%.

       (8) The debtor's lack of attempt to repay creditors;

       (9) The debtor's payment of debts to insider creditors;

       (10) The debtor's "procedural gymnastics" that have the effect of frustrating creditors;

       (11) The unfairness of the debtor's use of the bankruptcy process.

Smith, 295 B.R. 69, 79 (E.D. Va. 2003). Courts continue to analyze the same factors in determining "whether the debtor filed the petition in bad faith" under 11 U.S.C. § 707(b)(3)(A). *See e.g.* In re Watson, 2010 Bankr. LEXIS 3735 \*\*11-14 (Bankr. N.D. W.Va. 2010).

    33.    In this case, it appears the petition was filed in bad faith because: (1) the Debtors' appear to have insufficient assets given the debts incurred and income earned; (2) the Debtors overstated their payroll deductions to disguise their true financial situation and claimed certain excessive and/or unreasonable expenses and/or expenses they are not paying on Schedule J; (3) the Debtors have the ability to repay their creditors over time and they continue to live in an excessive house (and not pay the second lienholder); (4) the Debtors filed because of creditors' collection efforts and several of the debts appear to have been incurred through conduct akin to fraud or misconduct; (5) the Debtors do not appear to have attempted to adjust their lifestyle and repay their creditors prior to filing the petition; and (6) the granting of a discharge to the Debtors would be unfair under the circumstances of this case. Because the petition was filed in bad faith, the case should be dismissed unless the Debtors voluntarily convert their case to one under either chapter 11 or 13 of the Bankruptcy Code.

    WHEREFORE, the United States Trustee, by counsel, respectfully requests the entry of an order dismissing the Debtors' case pursuant to § 707(b)(1) of the Bankruptcy Code unless the Debtors voluntarily convert their case.

Date:  April 23, 2013                          Respectfully submitted,

                                                          United States Trustee

                                                          By: /s/ W. Joel Charboneau

## NOTICE OF HEARING

PLEASE TAKE NOTICE that the United States Trustee has filed a *Motion To Dismiss Case For Abuse* (the "Motion").  A preliminary hearing on the Motion will be held on May 20, 2013, at 9:30 a.m. in the United States Bankruptcy Court, 255 W. Main Street, Charlottesville, Virginia.  **If you do not want the Court to grant the relief requested in the motion, then, pursuant to Local Rule 9013-1, you must file a response on or before 7 days prior to the preliminary hearing.  Absent a timely filed response, a proposed order may be tendered to the Court dismissing the case and the Court may treat the motion as conceded and enter the proposed order without the necessity of holding a hearing.**

Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

## CERTIFICATE OF SERVICE

I certify that on April 23, 2013, I electronically filed the foregoing with the United States Bankruptcy Court for the Western District of Virginia which caused electronic notifications of filing to be served on all registered users of the CM/ECF System that have appeared in this case. On this same date, I mailed a copy by first class mail to:

Michael and Pamela McCamy
Post Office Box 285
Orange, Virginia 22960

                                          /s/ W. Joel Charboneau

Office of The United States Trustee
210 First Street, Suite 505
Roanoke, Virginia 24011
540-857-2699
joel.charboneau@usdoj.gov

8